Alright, let's close down the session. Let's get everybody out of here. Please be seated. Call the application please. 315-069-U.S. Bank, National Ass'n v. Napoli by Jeffrey T. Keurig with Paul Stibolt. Mr. Gordon? Thank you, Your Honor. Please, the court, counsel. I'm Dennis Gordon and I represented the affluent in this case, Paul Stibolt, who is the defendant in the foreclosure action. The plaintiff in the foreclosure action is what we'll generally refer to as a mortgage-backed pool of securities in which they pool mortgages and then they issue securities based on that pool of mortgages. I explain this to the court because as we go through our arguments, the distinction between the plaintiff as being a mortgage-backed security or being simply a bank is very important to our arguments. The trustee of that trust was U.S. Bank, but they were simply the nominal trustee only for the purpose of forming the trust and the trust was formed under the laws of the state of New York. This was a 2007 mortgage-backed security and the date of the trust itself was September 1st of 2007 and the trust closed by its own terms on October 10th of 2007. And under the laws of the state of New York, the trust laws and also the laws in the Internal Revenue Code, those dates are critical because under the terms of the trust, anything that's not in the trust when it closes is not subject to the issues of the securities and also doesn't have all of the Internal Revenue Code tax advantages that a trust does. So these are specific real estate vehicles called REMICs and I'm not going to assume that everything I say is going to help out here. So if there's anything I say that doesn't need answers for, I'll try to provide it. But this is not a run-of-the-mill foreclosure where someone doesn't pay the bank for their house and the bank forecloses. These are distinctions that we have to make in these kind of cases. I'm going to talk basically in two general, I'm going to call them baskets of arguments. One of which is the standing of the plaintiff to bring this issue in the first place. But I'm first going to talk about the second aspect and that's that a condition proceeding under the mortgage was not complied with, which under the terms of the mortgage itself, it's self-contained in the mortgage, the plaintiff can't file a complaint in foreclosure unless it complies with this condition proceeding. And the condition proceeding appears in paragraph 22 of the mortgage. And it says that at least 30 days before we file a complaint, if you haven't paid us or you otherwise breached the mortgage, we're going to give you a notice that we intend to accelerate the debt, which means that you call all of the debt due at the same time. And we're going to send you a letter that has, in a ballpark way, like six components of that letter. But if we send you the letter, it has to list all of those components. And if it doesn't have all of those components, then it doesn't comply with the notice. So you can't just give a notice that says this is a letter of intent to foreclose or a notice of intent to accelerate the debt and nothing else because that still doesn't comply with paragraph 22 of the mortgage. And we raise this as an issue because under the case Cathay Bank v. Assaturo, if this kind of notice of intent to accelerate is not given prior to the filing of the complaint, then the complaint must be dismissed because of the fact that a condition proceeding hasn't been met. And they go through great lengths with the analysis. But the bottom line is that we raise this as an issue. And in fact, we not only raise it as an affirmative defense, but we had a signed affidavit from the defendant indicating that he, among other things, never received this letter of intent to accelerate from the lender. And that's all that's required in these cases is that the debtor sign an affidavit saying that there's no reason why he wouldn't have gotten the notice, but he went through all of his files on the account and no notice was provided to him. At that point then, under the cases, the burden shifts to the plaintiff to say, you know what? I know it's not an affidavit, but he's a liar because here it is. Here's our affidavit. You file a counter affidavit to refute what the defendant said. But there was no such affidavit ever filed by the plaintiff, no counter affidavit. And based on L&I law, if there's a sworn affidavit that's filed and there's no counter affidavit to refute that, then the facts contained in the affidavit must be construed to be true. So it was never disputed that my client never received a notice of intent to accelerate. And therefore, based on that, we believe that a condition proceeding to the filing of the complaint was not met and therefore the complaint should have been dismissed. However, it wasn't because the trial court judge felt that that was not a genuine issue of material fact as to whether or not the plaintiff had complied with paragraph 20-12 in the mortgage and granted the motion for a summary judgment in any event. As to the standing issue, I'm going to break down standing in two different ways too. One is the initial standing issue because standing is always determined on the date that the complaint is filed. If you don't have it then, you can't get it later on. Standing is standing at the time the complaint is filed. But in this case, there was a second issue and that's what I refer to as the divestiture of their justiciable interest in the subject matter of the litigation. I'm first going to talk about the initial standing issues first. And there's a distinction in foreclosure. There's been a lot of confusion in the courts between the distinction between standing and capacity. Because a lot of courts have looked at, they talk about capacity but they're really talking about standing or vice versa. Capacity is determined by the Illinois Mortgage Foreclosure Law. And that's basically almost everybody and their Uncle Harold can be a plaintiff under the IMFL because you don't have to have a justiciable interest to be the plaintiff. You can actually be the servicer or someone who otherwise has delegated the authority to enforce the note. So the plaintiff in a normal foreclosure case in their capacity doesn't actually have to prove that they have standing. All they have to prove is that under the IMFL they have the capacity to be a plaintiff. By standing we go to the original jurisdiction of the courts in Illinois under the Constitutional Article 9 that says that unless you have a justiciable interest in the litigation then the courts don't have jurisdiction over that case. If one of the parties has no justiciable interest, in this case it's generally the plaintiffs, they have to have a justiciable interest. And standing is a component of justiciability. So without standing you can't have a justiciable interest in the litigation and therefore you can't file and maintain a complaint. In this case, when the complaint was filed, in every foreclosure action you have to file at least two exhibits. Exhibit A is a copy of the mortgage that's the security for Exhibit B, which is the note. And you have to attach both of them because if one of them isn't attached then you can't file the complaint. It doesn't comply with the IMFL. In this situation, they filed actually three documents. One was the mortgage, which was Exhibit A. Exhibit B was a copy, but it wasn't a copy of the note. It was a copy of a certified copy of the note. And whoever certified that copy of the note, its title company, I believe it's Counselor's Title from what I recall from the exhibits, and it wasn't a party to the litigation who certified that that's a true and correct copy of the note. But in any event, that note, when it was filed with the complaint, had no endorsements on it at all. Because you can take the benefits of a note, which is a note negotiable instrument, in basically one of two ways. There can be a specific endorsement, in which case I could assign my interest in the note to you by putting on there that I'm assigning the note to you. And it has to appear on the face of the note or on what we refer to as an allonge. You can attach or affix an allonge to the note that does the same thing. The second form, which is the form that's required by the laws regarding remits, is that you have to endorse it in blank. Which if you endorse it in blank, that creates what we refer to as vera paper. And whoever has physical possession of that vera paper, at any point in time, is the one who's going to force it. It's truly like having, if I write a check out for cash and endorse it, and you find it, it's blank endorsed. And that's not an exact analogy, but that's what vera paper is, is that you can pick it up, take it to a bank, and they have to honor it because the negotiability has been completed by what I did with that. But as I said, the note that was filed with a complaint had neither of these. So it demonstrated no interest in the note by the plaintiff, who was this mortgage-backed securities investor. Bless you. The third document that was filed was an assignment of mortgage. And that was an assignment from MERS, which MERS is the Mortgage Electronic Registration System. We've all heard a lot about it. Bless you. We have a, it's a synthetic recording system, where MERS tracks all of the assignments of the mortgage from party A to party B without having to actually record a mortgage and pay a recording fee in the county in which it's affected. So it's basically a synthetic recording system. And the way that MERS gets its power is in the mortgage itself. It says, for the purpose of this mortgage, MERS is the nominee, is our nominee, which means that MERS can track the recording. Or if MERS wants to assign it on behalf of the original mortgagee to someone, then MERS can actually execute an assignment which takes it out of the MERS system. It's then just a normal assignment of the mortgage. But MERS does not hold the notes. MERS, like I said, is a synthetic recording system. And MERS, and we have cases that say that MERS doesn't hold the notes and has no ability to endorse or assign the notes. So that was the third document that was attached was this assignment from MERS. The reason that I bring this up is that we go back... Can I stop you there? Yes. Are you alleging that's an invalid assignment then since MERS doesn't have the authority? Exactly. It was a defective transfer into the trust, especially because the note wasn't endorsed to anybody. And to comply with the laws that pertain to these trusts, the note has to be endorsed in blank, so it's bare of paper. But secondly, and more importantly perhaps, is that this purported assignment was signed two years after the trust closed. I was just going to ask, what was the date of the assignment? Yeah, the date of the assignment was in, I believe, September of 2009, and the trust closed two years earlier in October of 2007. So even this purported assignment was defective because it wasn't... So therefore, it was a void transfer. Now, there's been much discussion in Illinois courts about whether or not that kind of transfer, if it's defective, is void or merely voidable. And the key case on that back in 2012 was the Bassman case, in which the Illinois courts took a look at any cases that they could find, and they said, we can't find any Illinois cases to help us determine whether or not these defective transfers are void or merely voidable. And if they're merely voidable, then the defendant has no standing to contest the defective transfer. It's only if the transfer is void that the defendant has standing to contest the transfer into the trust. And that's a very important distinction because if it's merely voidable, then it deprives the defendant of the right to challenge the transfer into the trust. Under Bassman, they couldn't find any cases in Illinois, and they looked for other authorities, including cases in other jurisdictions. And finding none, they felt compelled to interpret the laws of the state of New York as to what they think New York law means in that case. And they actually cited the trust statute that says that a conveyance into a trust that doesn't comply is void. But they said that since this trust has a trustee, as every trust has to do, then if the trustee did something wrong, then that would be considered to be an alter virus act. And an alter virus act, from a trust and corporate standpoint, it can be ratified, and therefore it's no longer void or voidable. It's effective. Okay, thank you. So they went down that road, and they found that their decision in Bassman was that these transactions, since they could be ratified by the trustee and the party depositing the documents to the trust, that it was only voidable, and therefore the defendant had no standing to challenge those void transfers into the trust. But two years later, I'm sorry, one year later, there was actually a New York case. There was finally a New York case, but it was after this decision in Bassman. And that's the case, Ira Bobo was the defendant. And it was a foreclosure case. And in that situation, the Supreme Court of New York, the Keynes County Division, took a look at these cases, and they even talked about Bassman, and they said we're going to disregard that logic in Bassman because we believe that based on New York law, if it's a defective transfer into a trust, it's void. Therefore, the defendant does have standing to challenge the transfer into the trust, in which case the trust may have no justiciable interest when it fought the litigation. The case that I cited in my brief was a case called Saldivar. And Saldivar, in their opinion, not only talks about the Ira Bobo decision in New York, but also an intervening case called Glaskey, and that was a California case. And all of these are now on the same line. Is that because New York finally decided its own issues based on its own law, that therefore the defective transfer into a trust is void, and that gives the defendant standing to sue. I just want to finish up one more comment, and that's because I'm going to get real quickly into the issue about whether or not there was a divestiture of the justiciable interest. And that's because two years into the litigation, I'm sorry, four years into the litigation, in 2013, the plaintiff wanted to change from being this mortgage-backed security to a plaintiff called NationStar Mortgage, which is not a mortgage-backed security. It's a standard lender. And they filed a motion to substitute party plaintiff and attach to it a recorded assignment of the mortgage out of the trust to NationStar. About a year later, I don't know whether it was an oops or a well, we thought twice about it, they wanted to reconvey or negate the assignment of the mortgage out of the trust and put it back into the trust and proceed with the litigation as if this had never happened. I take the position that you have to have standing when you file a complaint. That if somewhere during the course of litigation, prior to judgment, you divest your interest in the subject matter, then you no longer have standing and it's inappropriate to file a motion to substitute party plaintiff. That's if you got the name of the plaintiff wrong or someone did have a right, but you have to put that right part in place. What they did is a substitute for voluntarily dismissing the complaint and refiling it properly with the new transferee, NationStar, as being the plaintiff. Okay. You'll have what you get five years reserved, I presume? Yes, yes, correct. You can finish your sentence there. Oh, okay. So, therefore, it's our position that there were genuine issues of material fact as to these failed transactions and whether or not there was standing at the time the litigation was filed. We feel that the complaint should be dismissed, but at minimum, the court exited its authority in granting the motion for summary judgment because clearly there are genuine issues of material fact that should have been considered by the court. Thank you. Mr. Carrick. Good afternoon, Justice. As may it please the Court, my name is Jeff Carrick. I represent the appellee in this matter. Counsel did an excellent job arguing the defenses to the motion for summary judgment that was filed in the trial court. However, what is before this Court today is the denial of a 214-01 petition to vacate that was filed three months after an order-approving sale was entered in the foreclosure and approximately one month after a deed to the successful bidder of the foreclosure sale was recorded. Under these circumstances, Section 15-1509C of the Illinois Mortgage Foreclosure Law was quite clear that it is a bar to all claims to any parties to the foreclosure. Counsel does not and cannot dispute that his client is a party to the foreclosure, does not dispute that this deed was recorded, and did not even discuss why 1509C should not apply to this case. There is argument that the trial court was somehow void in the appellant's brief. The appellant does not elaborate as to why that judgment might be void. As best as I can tell, the argument seems to be that the alleged lack of standing somehow creates a void judgment, but the law in Illinois is quite clear that standing is not a jurisdictional issue. The Supreme Court in the LeBron v. Gottlieb Memorial Hospital case was clear that standing is an affirmative defense which can be waived if not asserted. Subsequently, the 2nd District and Nation Star Mortgage v. Canale 2014, Appellant 2D-130676 rejected an argument that the failure to plead and prove standing deprived the Court of subject matter jurisdiction and thus rendered the foreclosure judgment void. So given that there was no void order, 1509C clearly applies, which provides a basis for the trial court to correctly deny the 21401 petition. That said, even if 1509C did not apply, I should back up. The other argument that was asserted was the condition proceeding argument related to sending this notice. Again, that would be a defense to the foreclosure. Counsel is absolutely correct that it is a defense, but again, it does not go through the Court's jurisdiction, which would render a judgment void. So again, under 21401, which is what we are here on today, the denial of that petition, the burden is on Mr. Stibbult to meet these three factors set out in the Supreme Court case in Heirloom of the existence of a meritorious defense, due diligence in presenting the defense, and due diligence in bringing his motion to vacate. Neither in the trial court nor in the opening appellant's brief did Mr. Stibbult even attempt to address these arguments. They are now forfeited, and the Court can affirm the trial court on this basis as well. If they were not forfeited, and giving Mr. Stibbult the benefit of the doubt that his petition to vacate, which is really, in essence, a motion to reconsider the motion for summary judgment, that standing and condition proceeding for failure to provide this notice is somehow his meritorious defense, they, again, do not apply. They do not provide a defense. Counsel ignores that there was an amended complaint filed in the trial court wherein a note endorsed in blank was attached as an exhibit. There was no answer or affirmative defenses filed to that amended complaint. The affirmative defenses raised that counsel mentioned were filed in response to a prior complaint. They were not filed in response to the amended complaint. No answer was filed. No affirmative defenses were filed. Instead, my client filed a motion for summary judgment. That motion was granted. It was subsequently vacated by the Court on Mr. Stibbult's motion. He was given a chance to respond to the motion for summary judgment. It's at that point that he attempted to, again, assert the standing defense, the condition proceeding defense that he had asserted previously as affirmative defenses to the initial complaint. However, the law is clear. As this Court determined in Aurora v. Perry, affirmative defenses cannot be asserted in response to a motion for summary judgment. They can be asserted in a cross-motion for summary judgment, which a number of courts have held, but they cannot be asserted in response to a motion for summary judgment. By that point, as the Supreme Court precedent dictates, the standing defense is waived and forfeited. The same goes for the condition proceeding affirmative defense. So being that those were both forfeited, they cannot provide a defense to the foreclosure that would be a meritorious defense for purposes of a 214-01 petition to vacate. Even if they had not been waived, again, the amended complaint did attach a note, which is prima facie evidence of standing to foreclose. Counsel goes to great lengths to argue that there are issues with noncompliance with the pooling and servicing agreement, which somehow impacts standing. But as the knowledge, the Illinois court has found that a borrower does not have standing or a non-party to those agreements does not have standing to raise that claim. I recognize that it's not binding authority, but the Seventh Circuit and Jefferson v. Bank of New York, 816 F3D 942 has also held that a mortgagor of a loan owned by a trust is not the intended beneficiary and does not have standing to challenge a trustee's possession or status as a signee of the loan. Again, given the lack of standing, he is not in a position to challenge whether or not the transfer to the trust is proper. In addition, by attaching a copy of the note endorsing blank complaint, it's prima facie evidence that our client is the holder of the note endorsing blank, which would, again, provide the ability to foreclose. Again, with respect to the condition preceding failure to provide a copy of the notice of default and acceleration, we need not show that the notice is not sufficient for him to merely say he did not receive the notice. It must be demonstrated that the notice was actually not sent, which he failed to do. It is his burden on a 214-01 petition to prove a meritorious defense by the preponderance of evidence. I should back up a bit here as well on that issue. There is some dispute in the briefs regarding the proper standard of review for a 214-01 petition to vacate. The appellant cites the Supreme Court case in Vincent, saying that in certain circumstances, de novo review applies. However, in a more recent Illinois Supreme Court case, the Warren County Soil and Water Conservation District versus Walters matter, the court went back and revisited the people of the Vincent matter and addressed some of the confusion that was created by the Supreme Court decision in that case and clarified that Vincent represents only a specific niche of 214-01 petitions, wherein purely legal issues are presented to a claim challenging a final judgment order as void. As for the reasons previously discussed, we're not dealing with a void judgment here. So under those circumstances, you go back to the traditional fact-dependent challenge to a final judgment, which looks at the three factors set forth in airroom. Under that standard, the abuse of discretion review does apply. Based on the facts of the case, the trial court clearly did not abuse its discretion at correctly denying the petition to vacate under 1509C of the Illinois Mortgage Foreclosure Law, even if this corporate fine of that did not apply. Counsel did not, Mr. Sybil did not even attempt to demonstrate that the airroom factors apply, which would warrant a granting of the petition to vacate. Since he didn't even attempt to address those issues, they are now forfeited. Giving the petition to vacate a generous reading, that the arguments asserted with respect to the summary judgment motion are, in fact, as purported meritorious defenses, again, for the reasons discussed previously. Those do not provide him a valid defense of foreclosure. Again, the other factors which were not addressed by Mr. Sybil, which include the due diligence in asserting the defenses in the foreclosure action and due diligence in bringing the petition to vacate, are not even addressed and forfeited. If they were, it's hard to see how due diligence could be shown here. This foreclosure was filed in 2011, a year passed before an appearance was even filed. An appearance was only filed after default was entered. It came in, filed an answer in front of the defenses, but then after an amended complaint was filed, it was given leave to time to file an answer to that amended complaint. It failed to do so. Motion for summary judgment was, again, filed, entered against him without him making any kind of response whatsoever. Only after judgment was entered did he then go in and get more time to file a response to the motion for summary judgment. Fast forward, summary judgment is entered. The sale takes place. An order confirming sale is entered. Still nothing is done until three months later when this 214-01 petition to vacate is finally filed. There's no reason whatsoever given in the petition for why these defenses were not previously asserted in this complaint, why there was no response to the motion for order approving sale, why three months were allowed to go by following the confirmation of the sale, following the recording of the judicial sales deed before this petition to vacate was filed. Thank you. So, again, under these circumstances, there's no reasonable argument that Mr. Sybil was diligent in asserting his defense. It's either in the foreclosure action or in asserting his petition to vacate. Based on these facts, it's clear that the trial court cannot abuse its discretion in denying the petition to vacate, and its ruling should be affirmed. Thank you. Mr. Borgeson or Baldwin? Thank you. I'm going to address just basically two issues. The first one is regarding the criteria for a 14-01 motion on the subject of due diligence. It's incorrect that the affirmative defenses were not raised by my client. In the brief on page 9, we indicate that an answer and affirmative defenses were filed. We listed the affirmative defenses, and they're in the record at C352 to C376, that we did raise the issue of standing. We also raised the issue of condition proceeding, and that was raised in our answer and affirmative defenses. Several years later, when a motion for a summary judgment was filed by the plaintiff, we pointed out to the trial court that the plaintiff had never responded to the affirmative defenses, which basically means an affirmative defense that's not stricken or otherwise answered is deemed admitted. So basically, they never responded to the affirmative defenses after they were raised until they filed a motion for summary judgment. Again, when we filed a response to the motion for summary judgment, we pointed out to the trial court that we raised affirmative defenses in the answer, and they were never addressed. So therefore, those issues automatically are genuine issues of material fact because they had never been responded to. So from a due diligence standpoint, my client continually raised the affirmative defenses. In fact, raised the standing issue initially when it answered the complaint. Let me just talk about due diligence a minute. There was one default judgment against him. Yes, that was early on, correct. And then later, when the summary judgment was entered, there was no apparent response to that motion for summary judgment, right? There was a response. I'm not sure if a response was filed to the motion for summary judgment. I can go back in the record that I'm not sure of. Well, in the trial court, the court vacated at least two prior judgments. I'm sorry, if I may. On January 8th, it's in the brief on page 11. On January 8th of 2016, Paul filed a response to plaintiff's motion for summary judgment, C545-572, in which he raised the fact that the plaintiff had never responded to the denials and affirmative defenses set forth in his answer. I'm sorry to interrupt, but the answer is yes, they did file a response to the motion for summary judgment in which they reiterated the affirmative defenses that had never been addressed by the plaintiff up to that point. Correct. And I'd like to respond to that because the only rationale that the trial court gave for denying the 1401 motion is his erroneous interpretation of the statute that you can't file a 1401 motion after the foreclosure has been confirmed, which that you don't have under element one. You don't have a final and appealable order until it's the order confirming the sale. You can't appeal the grant of a motion for summary judgment because of the steps that need to be taken prior to the foreclosure. Well, we're not talking about filing a motion of appeal. We're talking about filing a 214-01 motion. Correct. And under the statute, if it's filed less than 30 days after the judgment, it's a 1301 motion. After that, it's a 1401 motion, and you have up to two years after the final judgment to follow a 1401 motion for the purpose of attacking an order that's void. And the whole point of what we've talked about up to this point is that the order that was entered by the court was void because the plaintiff didn't have standing to sue and didn't comply with a motion to proceed, which makes the order that the court entered void. Well, is that the order? The condition proceeding does not. That's a contract issue, right? If the court says you've got to do this before you do that. And so, for example, if it went to court, must a defendant ever raise that condition proceeding? Wouldn't it be a waive? Well, that's not jurisdictional, so that doesn't render it. That's hardly jurisdictional. I believe under the Café Bank v. Asotero case, I believe the answer is yes, is that you could file a 1401 motion to raise the issue that a condition proceeding to the filing of the complaint had not been complied with and, therefore, the orders entered by the court are void on that basis. I believe that that's what that case stands for. Counsel, do you have one? Okay. Also, there was an issue that the condition proceeding wasn't raised. Again, that was raised when the affirmative defenses were filed initially. And the final point I'd like to make is that there was a – in the response brief by the plaintiff, they wanted the court to take judicial notice of a recorded document. And for the purposes of this 1509 motion, that document was never – it's not in the record. It was never – Did you say his name was up? Oh, I'm sorry. Oh, I'm sorry. That's what I'm talking about. And that was never before the trial court. The trial court had never seen that document. And, in fact, I don't believe that you can ask the reviewing court to recognize a document that apparently existed during the course of litigation but had never been presented to the trial court and the trial court judge never had the opportunity to say, oh, 1509. Well, of course, that makes all sense because he had never heard the argument. The plaintiff had never presented the argument at the trial and had never provided to the court this exhibit that doesn't even come into play until after the case was already being briefed. We'd never seen that document before. So I don't believe that the defense that because of Section 1509 that you can't file a 1401 or any other post-confirmation motion because of 1509, which was a deed that was apparently issued only two weeks after the final judgment, so the order wasn't even final and appealable, and to file this document and then say, well, you can't file an appeal because it's too late. We already did this deed. That simply doesn't make any sense. Thank you very much. All right. Mr. Gordon, thank you. Mr. Carrick, thank you. This is a matter of advisement. This is the position of the district. We'll be discussing the final statement before the next hearing. Thank you. Thank you. All right. The court stands reasoned.